UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Julius Webster,                                                      Case No. 1:17-cv-2519

              Petitioner,

    v.                                                           MEMORANDUM OPINION
                                                                     AND ORDER

George Frederick,[1] Warden,

              Respondent.

## I. INTRODUCTION

Petitioner Julius Webster has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, concerning his conviction on charges of rape and robbery in the Chillicothe County, Ohio Court of Common Pleas. (Doc. No. 1). Magistrate Judge James R. Knepp, II[2] reviewed the petition as well as the related briefing pursuant to Local Rule 72.2(b)(2) and recommends I deny the petition. (Doc. No. 12). Curry filed an objection to Judge Knepp's Report and Recommendation. (Doc. No. 14). For the reasons stated below, I overrule the objection and approve and adopt Judge Knepp's Report and Recommendation.

---

[1] Webster is currently incarcerated at Ohio's Correction Reception Center, where George Frederick is the Warden. Frederick, therefore, is substituted as the defendant in this proceeding. *See* Fed. R. Civ. P. 25(d).

[2] Since the time that Judge Knepp issued his Report and Recommendation, he has been confirmed and invested as a district judge in this Court.

## II. BACKGROUND

The Ohio Eighth District Court of Appeals summarized the relevant facts, in part, as follows:

> In May 2014, Webster was charged with several violent offenses in a 23–count indictment. The indictment was comprised of four separate incidents under an umbrella theory that Webster committed each offense in furtherance of his criminal gang, the Heartless Felons.
>
> Count 1 alleged that Webster participated in a criminal gang with codefendants Robert Porter, Dawayne Arnold, Derrick Durden, and Lakia Golston, in violation of R.C. 2923.42(A), from June 17, 2013 to December 6, 2013. Webster was also charged with aggravated murder, murder, multiple counts of aggravated robbery, having a weapon while under disability, felonious assault, tampering with evidence, escape, obstructing justice, retaliation, and intimidation of a crime victim or witness. Many charges included firearm, repeat violent offender, and gang activity specifications.

*State v. Webster*, 2016-Ohio-2624, 2016 WL 1593052, at *2 (Ohio Ct. App. Apr. 1, 2016).

The trial court held a jury trial regarding most of the charges but held a bench trial on the charges "relating to Webster's gang activity, his use of firearms while under disability, and the escape charge." *Id.* at *6. At the trials' conclusion:

> the court found Webster guilty of all gang-related counts and specifications, and having weapons while under disability charges. The jury found Webster guilty of the aggravated robbery and murder of Curtis Marks, with one-and three-year firearm specifications, the aggravated robbery of the B & B mart in Canton, with one- and three-year firearm specifications, and attempted tampering with evidence in Canton, with one- and three-year firearms specifications. The court found Webster guilty of gang and repeat violent offender specifications attendant to the aggravated robbery and murder charges.
>
> The court sentenced Webster to an aggregate 99 years to life in prison on all counts and specifications.

*Id.* at *8.

Webster appealed his conviction. The Ohio Court of Appeals largely affirmed with a minor modification: "Webster's obstruction of justice conviction on Count 20 of the indictment [wa]s

2

reduced to attempted obstruction of justice. The remainder of the trial court's judgment is affirmed." *Id.* at *28. The court remanded the case for resentencing on Count 20. *Id.* The trial court imposed the same sentence at resentencing. (Doc. No. 5-1 at 468). Webster asserts no objection here relating to it.

### III. STANDARD

Once a magistrate judge has filed a report and recommendation, a party to the litigation may "serve and file written objections" to the magistrate judge's proposed findings and recommendations, within 14 days of being served with a copy. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Written objections "provide the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately . . . [and] to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Kelly v. Withrow*, 25 F.3d 363, 365 (6th Cir. 1994) (quoting U*nited States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981) and *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). A district court must conduct a *de novo* review only of the portions of the magistrate judge's findings and recommendations to which a party has made a specific objection. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

### IV. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits the issuance of a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). "The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. §

3

2254(e)(1)).

      A.        **Harmless-Error**

Webster raises a single objection to the Report and Recommendation. He asserts that the trial court failed to conduct a proper analysis under *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), regarding whether the prosecution used a peremptory challenge to remove an African-American prospective juror based on race. (Doc. No. 14 at 6-11).

During voir dire, the trial court removed the first two prospective jurors for cause. (Doc. No. 6 at 519, 580). One was African-American and the other was Hispanic. (*Id.* at 726). The court struck juror number one after he testified that he had heard a news report regarding the case that morning and that it would affect his view of the case. (*Id.* at 569-580). The prosecution argued successfully for the removal of juror number two for cause.[3]

Webster's objection focuses on prospective juror number eleven, who was African-American. (*Id.* at 726). The prosecution exercised a peremptory strike of the juror, and the parties and the court had the following colloquy:

> DEFENSE:    We have a Batson challenge, your Honor. Number One and Number Two are people of color that are excused for cause. The three remaining minority jurors. There is no reason for a pattern to be shown, but we are objecting to the removal of No. 11 by the Prosecution.
>
> THE COURT:    Before I let Mr. Filiatraut speak, I can think of about a dozen reasons why she would be excused from the panel.

---

[3] Webster's counsel specified during voir dire that he was not asserting a pattern by the prosecution of striking minorities. (Doc. No. 6 at 1312). He now seeks, nonetheless, to use the prior strikes for cause as support for finding a *Batson* violation. That attempt is meritless. *Ward v. United States*, No. 1:07-CR-73-001, 2012 WL 137873, at *4 (S.D. Ohio Jan. 18, 2012) ("Striking jurors for cause . . . does not raise a *Batson* issue.") (citing *United States v. Elliott*, 89 F.3d 1360, 1364–65 (8th Cir. 1996)); *Reid v. Moore*, No. 3:05-CV-326, 2008 WL 596781, at *18 (S.D. Ohio Mar. 5, 2008) ("If a prospective juror is excusable for cause, it is difficult to imagine how it could be a Batson violation . . . .").

>PROSECUTION: Thank you,
>
>THE COURT: There are plenty of reasons that have nothing to do with race as to why she was removed.
>
>PROSECUTION: When you look at Batson you do not look at challenges for cause. Juror No. 1, who is an African American female, and Juror No. 2 was a Hispanic male. And race had nothing to do with the for cause reasons that they were excused. So I think the --
>
>THE COURT: I apologize for the comment. I am just saying that there is plenty of other reasons that I could see her being removed.
>
>DEFENSE: We object.
>
>THE COURT: Ok. Thank you. I will note your objection.

(*Id.* at 726-27).

Webster contends that the court erred by approving the prosecution's peremptory strike in violation of *Batson*.

In *Batson*, the Supreme Court reaffirmed that

> Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

476 U.S. 79, 89 (1986) (citations and internal quotation marks omitted).

The Court set out a three-step analysis courts must apply to resolve claims that a party has exercised its peremptory strikes to exclude potential jurors based on race. *Id.* at 98. The Sixth Circuit has summarized that analysis as follows:

> Under *Batson,* once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination, the burden shifts to the government to demonstrate a race-neutral reason for the exclusion of the juror. The government is not required to persuade the court that

5

> its reasons for dismissing the juror were well-founded; rather, it need only demonstrate that its reasons were race-neutral. Once the government offers a race-neutral justification, "the challenging party must demonstrate that the purported explanation is merely a pretext for a racial motivation." The burden of persuasion always rests with the opponent of the strike.

*United States v. Copeland,* 321 F.3d 582, 599 (6th Cir. 2003) (citations and internal quotation marks omitted).

Webster asserts that the trial court erred in combining the second and third steps of the *Batson* test. In doing so, Webster argues, the court cut the prosecutor off and ruled before requiring the prosecution to state a race-neutral reason for the strike. He claims that this alleged failure to follow the *Batson* test is a structural error that requires a new trial. (Doc. No. 14 at 7-9).

Webster made the same argument to the Ohio Court of Appeals, but that court rejected it. *Webster*, 2016 WL 1593052, at *13-15. It summarized its holding as follows: "Although the court's hearing did not strictly comply with the three-step procedure outlined in *Batson,* the hearing was sufficient to protect Webster's right to due process, and any error in procedure was harmless beyond a reasonable doubt." *Id.* at *15.

Webster's claim here is that the failure to strictly follow the *Batson* three-step analysis procedure is a structural error which, as a matter of law, cannot be harmless. (Doc. No. 14 at 6-10). "Structural errors" are errors that affect "the entire conduct of the trial from beginning to end." *Arizona v. Fulminante*, 499 U.S. 279, 309 (2013). They differ from trial errors in that "structural defects in the constitution of the trial mechanism . . . defy analysis by harmless-error standards." *Id.*

Judge Knepp recommends that I deny Webster's *Batson* claim. He recognizes that prior Sixth Circuit decisions have defined the failure to follow *Batson*'s three-step test as structural error that cannot be held harmless. (Doc. No. 12 at 31) (citing *United States v. McFerron*, 163 F.3d 952, 956 (6th Cir. 1998) and *Sims v. Berghuis*, 494 F. Supp. 2d 494 F. Supp. 2d 575, 583 (E.D. Mich. 2007)). Nevertheless, he also points out that Supreme Court has yet to rule on the issue whether a failure to

6

strictly follow the *Batson* procedure can be harmless error. (*Id.* at 31). Judge Knepp reasons that, under 28 U.S.C. § 2254(d), a habeas court may overturn a state court's legal analysis only if it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The absence of a Supreme Court decision regarding whether applying a harmless-error analysis to a failure to follow strictly the procedure *Batson* set out, he concludes, precludes habeas relief. (*Id.* at 30-34).

Judge Knepp also notes that in *Davis v. Ayala*, 576 U.S. 257 (2015), "the Supreme Court indicated that *Batson* claims could be subject to a harmless error analysis." (Doc. No. 12 at 31-32). In *Davis*, the Court held that an error in applying *Batson*—the trial court conducted its review of a *Batson* claim ex parte—was harmless. 576 U.S. at 286.

For these reasons, Judge Knepp concludes that the Ohio Court of Appeals' decision to apply harmless-error analysis to Webster's *Batson* claim was not an unreasonable application of Supreme Court precedent. (Doc. No. 12 at 31-32).

Webster argues strenuously regarding why he believes *Batson* errors are structural. Nevertheless, § 2254(d) only authorizes habeas relief when a state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Thus, the Sixth Circuit's *Batson* precedent and Webster's legal analysis have no bearing on whether he is entitled to habeas relief.

Particularly, in light of *Davis*, I cannot conclude that the Ohio Court of Appeals' application of *Batson* was unreasonable. Judge Knepp's application of a harmless-error analysis fully justifies his recommendation to deny relief.

B. **Whether the Trial Court's Deviation from the *Batson* Procedure Was Sufficiently Material to Rise to the Level of a Constitutional Violation**

The alleged error here relates solely to the trial court's failure to strictly follow *Batson's* procedure for analysis. As Judge Knepp noted, (Doc. No. 12 at 34 n.8), the trial court, in fact, did apply *Batson*'s substance and made the requisite findings regarding whether the prosecution had advanced a race-neutral explanation for its challenge and whether the prosecution's explanation was pretextual. It addressed the issue, however, in the context of the prosecution's earlier challenge to juror number 11 for cause. (Doc. No. 6 at 514-520). The trial court obtained a statement of a race-neutral reason for the prosecution's challenge and afforded the defense the opportunity to respond. (*Id.* at 516-18). In ruling on the challenge for cause, the trial court acknowledged that there was some justification for the prosecution's challenge but denied dismissal for cause on the ground that the juror had stated that she could set aside any prejudice or sympathy that she had. (*Id.* at 519-20).

Thus, when the trial judge improperly interrupted the prosecution's explanation of the reasons it exercised a peremptory strike on juror number eleven, the judge already had in essence earlier heard the parties' *Batson* arguments and reached a decision. While the trial judge did not find the prosecution's stated reason sufficient to justify removal for cause, the judge's ruling demonstrates that he concluded that reason was sufficient to justify a peremptory challenge of the same juror just a short time later. *See United States v. Shanshan Du*, 570 F. App'x 490, 497 (6th Cir. 2014) (The "court . . . did hear some rebuttal and clearly gave its conclusion—even if it did not explain its reasoning. This suffices."); *Mitchell v. Lazaroff*, No. 4:17CV01724, 2018 WL 8758745, at *11 (N.D. Ohio Dec. 6, 2018) ("After providing the parties a reasonable opportunity to make their respective records, the trial court's ruling on the credibility of a proffered race-neutral explanation can merely be expressed in the form of a clear rejection or acceptance of a *Batson* objection."), *report and recommendation adopted*, No. 4:17 CV 1724, 2019 WL 2082281 (N.D. Ohio May 13, 2019), *aff'd sub nom. Mitchell v. LaRose,* 802 F. App'x 957 (6th Cir. 2020).

Webster has not identified precedent requiring that the *Batson* analysis be performed in precise order or only in direct response to an objection to a peremptory challenge. Nor has he identified precedent requiring a court to repeat the analysis in response to a peremptory challenge when the court already has addressed its relevant elements in ruling on a challenge for cause. To the contrary, courts have overlooked a trial court's failure to strictly follow the *Batson* procedure when they have determined that the trial court applied the test in substance. *See, e.g.*, *United States v. Cecil*, 615 F.3d 678, 686–87 (6th Cir. 2010) (although court initially denied defendant's *Batson* challenge before hearing defendant's argument, the fact it heard defendant's argument before reaffirming its ruling meant "the required analysis was ultimately carried out" and that was "enough to overcome any fleeting failure to execute the third step of the analysis"); *Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir. 2002) (finding no remediable *Batson* error where the court "prematurely stated its conclusion before fully articulating the *Batson* analysis" . . . . [Reviewing courts] "should refrain from overturning the district court's decision on this issue unless it clearly erred in concluding that [the striking party] acted with discriminatory intent."); *McCurdy v. Montgomery Cnty., Ohio*, 240 F.3d 512, 521–22 (6th Cir. 2001) (where trial court initially "perfunctorily accepted the County's race-neutral explanation" and did not address the elements of the *Batson* test during jury selection, no relief was warranted because the court expressly addressed the test in its ruling on defendant's post-verdict motion for new trial); *Moore v. Green*, No. 3:18-CV-00164-JRW, 2019 WL 8883951, at *6 (W.D. Ky. Nov. 5, 2019) ("Despite the state court's less than ideal application of the three-step *Batson* inquiry, the trial court ultimately engaged in each of the required steps."), *report and recommendation adopted*, No. 3:18-CV-164-JRW-RSE, 2020 WL 2616739 (W.D. Ky. May 22, 2020).

Because the trial court had heard what it reasonably determined to be a sufficient race-neutral explanation for the peremptory strike and had given the defense the opportunity to argue in

9

response, its minor deviation from the *Batson* procedure was not a material error. It is insufficient to warrant habeas relief. This provides a separate, individually sufficient ground for denying relief.

### V.     CONCLUSION

For the reasons stated above, I overrule Webster's objection, (Doc. No. 14), to Judge Knepp's Report and Recommendation, (Doc. No. 12), and approve and adopt the Report and Recommendation.

I also conclude Webster fails to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(b)(2), and decline to issue a certificate of appealability.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge